1

2

3

4

5

6

7

8

9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONYA JEAN COX, | Case No. 1:23-cv-00448-SAB |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| v. | (ECF Nos. 19, 23) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## I.

## INTRODUCTION

Tonya Jean Cox ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff requests the decision of the Commissioner be vacated and the case be remanded for further proceedings, arguing (1) the Step 5 determination is not supported by substantial evidence; (1) there are discrepancies between the opinion evidence found to be persuasive and the residual functional capacity assessment; and (3) the ALJ failed to offer any reason to reject Plaintiff's symptom complaints.

For the reasons explained herein, Plaintiff's motion for summary judgment shall be denied.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes. (See ECF Nos. 8, 9, 10.)

## II.

## BACKGROUND

**A.    Procedural History**

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on September 11, 2020.  (AR 190.)  Plaintiff's application was initially denied on February 12, 2021, and denied upon reconsideration on December 21, 2021.  (AR 211-15, 219-23.)  Plaintiff requested and received a hearing before Administrative Law Judge Mary P. Parnow ("the ALJ").  Plaintiff appeared for a telephonic hearing on April 28, 2022.  (AR 724-53.)  On July 1, 2022, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 85-108.)  On February 2, 2023, the Appeals Council denied Plaintiff's request for review.  (AR 1-4.)

**B.    The ALJ's Findings of Fact and Conclusions of Law**

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, July 1, 2022:

1.   Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2025.

2.   Plaintiff has not engaged in substantial gainful activity since September 4, 2020, the alleged onset date.

3.   Plaintiff has the following severe impairments: bipolar disorder; anxiety disorder; substance use disorder; obesity; and seizure disorder.

4.   Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

5.   After careful consideration of the entire record, the ALJ found that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: must avoid exposure to unprotected heights and dangerous moving machinery; should not climb ladders, ropes, or scaffolds; should not operate a motor vehicle for work; and this individual is precluded from complex and detailed tasks but remains capable of simple, repetitive tasks in a routine work environment with no more than occasional contact with the general public.

6.  Plaintiff is unable to perform any past relevant work.

7.  Plaintiff was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8.  Plaintiff has at least a high school education.

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not she has transferable job skills,

10. Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

11. Plaintiff has not been under a disability, as defined in the Social Security Act, from September 4, 2020, through the date of this decision.

(AR 91-107.)

### III.

### LEGAL STANDARD

**A.    The Disability Standard**

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[2] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[3] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

[3] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only disability insurance benefits in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.

> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.

> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[4]  A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion); 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine

---

[4] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

1   residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

2          At step five, the burden shifts to the Commissioner, who must then show that there are a

3   significant number of jobs in the national economy that the claimant can perform given her RFC,

4   age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsbury v. Barnhart, 468 F.3d

5   1111, 1114 (9th Cir. 2006).  To do this, the ALJ can use either the Medical Vocational Guidelines

6   ("grids") or rely upon the testimony of a vocational expert ("VE").  See 20 C.F.R. § 404 Subpt. P,

7   App. 2; Lounsbury, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).

8   "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving

9   conflicts in medical testimony, and for resolving ambiguities.' "  Ford, 950 F.3d at 1149 (quoting

10  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

11         **B.    Standard of Review**

12         Congress has provided that an individual may obtain judicial review of any final decision

13  of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In

14  determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by

15  the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

16  Further, the Court's review of the Commissioner's decision is a limited one; the Court must find

17  the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. §

18  405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).  "Substantial evidence is relevant

19  evidence which, considering the record as a whole, a reasonable person might accept as adequate

20  to support a conclusion." Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting

21  Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson

22  v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential

23  clearly erroneous standard).  "[T]he threshold for such evidentiary sufficiency is not high." Biestek,

24  139 S. Ct. at 1154.  Rather, "[s]ubstantial evidence means more than a scintilla, but less than a

25  preponderance; it is an extremely deferential standard." Thomas v. CalPortland Co. (CalPortland),

26  993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v.

27  Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  Even if the ALJ has erred, the Court may not reverse

28  the ALJ's decision where the error is harmless.  Stout, 454 F.3d at 1055–56.  Moreover, the burden

1   of showing that an error is not harmless "normally falls upon the party attacking the agency's

2   determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

3        Finally, "a reviewing court must consider the entire record as a whole and may not affirm

4   simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153,

5   1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).

6   Nor may the Court affirm the ALJ on a ground upon which she did not rely; rather, the Court may

7   review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d 625, 630 (9th

8   Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). Nonetheless, it is not

9   this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment

10  for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is

11  the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart,

12  400 F.3d 676, 679 (9th Cir. 2005)).

13                                              **IV.**

14                              **DISCUSSION AND ANALYSIS**

15       As stated above, Plaintiff alleges the ALJ made three errors on appeal: (1) The ALJ's Step 5

16  determination is unsupported by substantial evidence as there are clear discrepancies between the

17  job descriptions and the limitations set forth in the RFC; (2) The ALJ's RFC determination is

18  unsupported by substantial evidence as she failed to explain the discrepancy between the opinion

19  evidence she found persuasive and the RFC in accordance with the regulations; and (3) The ALJ

20  failed to include work-related limitations in the RFC consistent with the nature and intensity of

21  Plaintiff's limitations, and failed to offer any reason for rejecting Plaintiff's subjective complaints.

22  (Pl.'s Motion for Summary Judgment or Remand ("MSJ") 3,[5] ECF No. 19.)

23       **A.      Whether the ALJ Erred in Considering Plaintiff's Subjective Complaints**

24       The Court first considers Plaintiff's contention that the ALJ erred by failing to offer clear

25  and convincing reasons to reject Plaintiff's subjective complaints. Plaintiff contends that the ALJ

26  failed to offer any reasons to reject her symptom testimony and therefore the RFC is not supported

27  _____

28  [5] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the
    CM/ECF electronic court docketing system.

by substantial evidence because it is not consistent with the nature and intensity of her limitations. Plaintiff states that the ALJ found that her impairments could reasonably be expected to cause her alleged symptoms and therefore could not discredit Plaintiff's symptom complaints merely because they were not supported by the objective evidence. (MSJ 11-2.) Plaintiff argues that the ALJ vaguely asserted that her statements were not consistent with the medical evidence and other evidence for the reasons explained in the decision and then merely proceeded to summarize the treatment records that detail her reported symptoms, objective findings and treatment plans. Plaintiff asserts that this does not state a clear and convincing reason to find her symptom testimony not credible. Further, Plaintiff argues that the ALJ did not indicate which of her symptom complaints were not supported by the objective findings. (MSJ 12.)

Defendant counters that Plaintiff complained of disabling limitations due to dizziness, migraines, and anxiety, but examinations revealed few supportive findings. (Def.'s Responsive Brief ("Opp.) 9, ECF No. 23.) Defendant contends that the physical and mental status examinations provide substantial evidence to support the ALJ's findings. (Opp. 9-10.) Defendant also argues that the ALJ noted that Plaintiff's allegations of nausea, numbness, tingling, dizziness, and anxiety were inconsistent with her reports to her treating providers. (Opp. 10.) Further, Defendant asserts that the ALJ noted that Plaintiff's condition improved when she adhered to treatment and medication recommendations. (Opp. 11.) Defendant also contends that the record documented noncompliance with recommended treatments and her improvement with treatment and failure to follow other treatment is inconsistent with her allegation of disabling impairments. Defendant argues that the ALJ provided multiple specific reasons to find Plaintiff's symptoms not consistent with the record. (Opp. 12.)

1.    Legal Standard

A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); SSR 16-3p; see also Orn, 495 F.3d at 635 ("An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment."). Rather, an ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. See Garrison v. Colvin, 759 F.3d

995, 1014 (9th Cir. 2014); Smolen, 80 F.3d at 1281; SSR 16-3p, at *3.  First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  Garrison, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82.  If the claimant satisfies the first step and there is no evidence of malingering, "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so."  Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations omitted).

If an ALJ finds that a claimant's testimony relating to the intensity of his pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive.  The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.  In this regard, questions of credibility and resolutions of conflicts in the testimony are functions solely of the Secretary.  Valentine v. Astrue, 574 F.3d 685, 693 (9th Cir. 2009) (quotation omitted); see also Lambert, 980 F.3d at 1277.

In addition to the medical evidence, factors an ALJ may consider include the location, duration, and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; conflicts between the claimant's testimony and the claimant's conduct—such as daily activities, work record, or an unexplained failure to pursue or follow treatment—as well as ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, internal contradictions in the claimant's statements and testimony, and other testimony by the claimant that appears less than candid.  See Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014); Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007); Smolen, 80 F.3d at 1284.  Thus, the ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of her symptoms; statements and other information from medical providers and other third parties; and any other relevant evidence included in the individual's administrative record.  SSR 16-3p, at *5.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be

8

expected to cause the alleged symptoms; however, her statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.  (AR 97.) Contrary to Plaintiff's contention, for the following reasons, the Court finds that the ALJ provided numerous clear and convincing reasons that are supported by substantial evidence in the record to discredit Plaintiff's symptom testimony within the decision.

    2.   <u>Inconsistency with Medical Record</u>

Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence."  <u>See</u> <u>Vertigan</u>, 260 F.3d at 1049 ("The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it."); <u>see also</u> 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.").  Rather, where a claimant's symptom testimony is not fully substantiated by the objective medical record, the ALJ must provide an additional reason for discounting the testimony.  <u>See</u> <u>Burch</u>, 400 F.3d at 680–81.

Nevertheless, the medical evidence "is still a relevant factor in determining the severity of [the] claimant's pain and its disabling effects."  <u>Burch</u>, 400 F.3d at 680–81; <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).  Furthermore, Ninth Circuit caselaw has distinguished testimony that is "uncorroborated" by the medical evidence from testimony that is "contradicted" by the medical records, deeming the latter sufficient on its own to meet the clear and convincing standard.  <u>See</u> <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1434 (9th Cir. 1995) ("The ALJ … identified several contradictions between claimant's testimony and the relevant medical evidence and cited several instances of contradictions within the claimant's own testimony.  We will not reverse credibility determinations of an ALJ based on contradictory or ambiguous evidence."); <u>Hairston v. Saul</u>, 827 Fed. App'x 772, 773 (9th Cir. 2020) (quoting <u>Carmickle v. Comm'r, Soc. Sec. Admin.</u>, 533 F.3d 1155, 1160 (9th Cir. 2008) (affirming ALJ's determination claimant's testimony was "not entirely credible" based on contradictions with

medical opinion)) ("[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); see also Stobie v. Berryhill, 690 Fed. App'x 910, 911 (9th Cir. 2017) (finding ALJ gave two specific and legitimate clear and convincing reasons for rejecting symptom testimony: (1) insufficient objective medical evidence to establish disability during the insured period and (2) symptom testimony conflicted with the objective medical evidence); Woods v. Comm'r of Soc. Sec., No. 1:20-cv-01110-SAB, 2022 WL 1524772, at *10 n.4 (E.D. Cal. May 13, 2022) ("While a *lack* of objective medical evidence may not be the sole basis for rejection of symptom testimony, inconsistency with the medical evidence or medical opinions can be sufficient." (emphasis in original)).  In applying the clear and convincing standard, the Ninth Circuit affirmed "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."  Carmickle, at 533 F.3d at 1161.

### a.  Analysis

In considering Plaintiff's limitation in understanding, remembering or applying information, the ALJ found that the records reveal Plaintiff reported memory issues and difficulty understanding and following instructions.  (AR 93, 357, 360, 700.)  Plaintiff reported she has been told that she repeats herself and stops before completing a conversation.  She needs other to break down the meanings of various statements or mail.  (AR 93, 360.)  However, the ALJ noted that the records revealed that Plaintiff completed the twelfth grade, had an associate of arts degree in business and no history of special education.  (AR 93, 467, 482.)  Further, the ALJ found that mental status examinations reveal thought processing and organization that was linear, coherent and with normal limits with no tangentiality or looseness of associations; language was intact in all modalities; and Plaintiff spoke in clear sentences.  Her memory for remote and recent events, comprehension and calculation, and abstract thinking were intact and average through the history taken from Plaintiff and events of recent, as well as remote issues that she was able to describe.  Abstract thinking was intact, and she appeared to be of average intellectual functioning.  (AR 93.)  In so finding, the ALJ considered the following records.

On January 25, 2021, Plaintiff had a complete mental status examination performed by Dr. Martinez.  (AR 466-69.)  Plaintiff was noted to have come to the evaluation unaccompanied and

reported driving the approximately five miles to the clinic.  Plaintiff was appropriately dressed for the appointment, and she was adequately groomed.  Her attitude and degree of cooperation was adequate for the exam.  Posture and gait were within normal limits, no involuntary movements were appreciated during the interview.  The reliability of Plaintiff's history was estimated to be good for the purposes of the examination.  (AR 466.)

Plaintiff reported physical problems.  (AR 466.)  She reported that her boyfriend committed suicide after discovering that he had HIV and she later learned that she too was positive for HIV. Her employer forced her into short term disability, and she later returned to work, but has been unemployed due to COVID restrictions and her susceptibility to infections.  Plaintiff has been on antiviral medications since her HIV diagnosis but was currently not taking them because she did not have insurance.  She was afraid to be in public and afraid of people, feeling they will treat her poorly due to her HIV diagnosis. Plaintiff reports she is unable to obtain or sustain employment due to her physical illness.  (AR 467.)

Plaintiff admitted to using marijuana, methamphetamine, and alcohol in the past, but denied current usage.  She admitted to involvement in the legal system three times; twice for gang related associations and once for assault eight years prior.  She lived with a roommate and can self-dress, self-bathe and handle her personal hygiene.  She has a driver's license and does drive.  Outside activities are non-existent.  Plaintiff is able to pay bills and handle cash and go out alone. Relationships with family and friends are reported to be good.  She was able to focus attention during the interview and had no difficulty completing household tasks.  (AR 467.)  She has no difficulty making decisions.  She spends her days mainly at home.  She wakes at 9:30 a.m. and is in bed by 2:00 a.m.  During daylight hours, she wakes up, cares for her personal hygiene, makes her bed and something light for breakfast.  She does household chores and cleans.  (AR 468.)

Examination notes that attitude and cooperation were adequate.  Posture and gait were within normal limits, there were no involuntary movements appreciated during the examination. Plaintiff was able to volunteer information spontaneously.  Thought processing and organization were linear and within normal limits.  She was not tangential.  There was no bizarre, delusional, psychotic, suicidal, or homicidal thought content.  There were no circumstantiality or loosened

associations.  Her mood was described as fine, and affect was expansive and congruent to thought content.  She was not tearful and denied feelings of hopelessness, helplessness, or worthlessness. Speech was normal and clearly articulated.  Speech volume and rate were normal.  Plaintiff was mostly alert, oriented to time, place, person, and purpose of the evaluation.  She appeared to be of average intellectual functioning.  Memory was grossly intact.  Fund of knowledge was within normal limits.  (AR 468.)  Abstract thinking, concentration and calculation were grossly intact.  (AR 468-69.)  Judgment was intact, and insight was limited.  Plaintiff was diagnosed with unspecified anxiety disorder and unspecified obsessive-compulsive disorder.  (AR 469.)

Dr. Martinez opined that Plaintiff had no impairment in her ability to understand, remember and carry out simple one or two step instructions; relate and interact with co-workers and the public; associate with day-to-day work activity, including attendance and safety; accept instructions from supervisors; maintain regular attendance in the workplace and perform work activities on a consistent basis; and perform work activities without special or additional supervision.  Plaintiff had mild impairment in her ability to do detailed and complex instructions.  She had moderate impairment in her ability to maintain concentration and attention, persistence and pace.  (AR 469.)

The ALJ also considered a complete psychiatric evaluation by Dr. Simonian on October 26, 2021.  (AR 480-84.)  Dr. Simonian conducted a telemedicine video evaluation and noted that Plaintiff presented in a friendly manner, eye contact was good, and facial expressions were normal. (AR 480.)  She interacted appropriately with Dr. Simonian during the examination and no bizarre behavior was observed.  She told Dr. Simonian that she applied for disability benefits because of COVID, and she feels bad.  (AR 481.)

Plaintiff was in bed and frequently coughing, stating that she had pneumonia.  She complained of anxiety and panic attacks.  Plaintiff reported seeing a psychiatrist and psychologist. She reported having used drugs and alcohol occasionally.  (AR 481.)  Plaintiff stopped working in December 2019 because of her medical condition.  She was terminated and believes it was due to being HIV positive.  (AR 482.)

Examination notes that Plaintiff is alert and oriented times three.  Speech was normal, although often interrupted by coughing.  Thought process was coherent, with no tangentiality or

looseness of associations.  Affect was mildly constricted, but appropriate to the contents of the discussion.  Her mood was sad with occasions of crying spells.  There were no delusions and she denied thought broadcasting, thought insertion, phobias, obsessions, derealizations, or depersonalization.  (AR 482.)

Dr. Simonian opined that Plaintiff was not limited in her ability to follow simple oral and written one or two step instructions; to follow detailed and complex instructions; to maintain concentration and adaption for a period of time; and to perform work related activities without special additional supervision.  Plaintiff was mildly limited in her ability to interact with the public, coworkers, and supervisors; to react to stressors common in a workplace environment; and to maintain regular attendance in the workplace and perform work activities on a consistent basis.  (AR 483.)

The ALJ also considered neurology appointments with Dr. Alexan.  Plaintiff was seen on March 18, 2022, for a consultation due to her seizures.  (AR 706-08.)  She complained of migraines and numbness and tingling in her left arm.  The date of her last seizure was February 10, 2022.  She came to the appointment alone and was noted to be walking normally.  (AR 706.)  She reported rarely using alcohol and that she had never used any illicit drugs.  She denied memory loss or confusion and reported daily depression, anxiety and mood swings.  Mental examination notes she is alert and oriented to person, place and time.  She was able to concentrate normally, language and memory were intact.  (AR 707.)

Plaintiff saw Dr. Alexan on March 29, 2022, complaining of numbness and tingling on the left extremity that starts at the elbow and radiates to the hand for the last three to six months.  (AR 700-04.)  She came to the appointment alone and was walking normally.  She reported difficulty with putting on her clothes due to her grasp and difficulty remembering appointments and recent conversations.  She reported her first seizure was in 2020 and she had three major seizures since then with five atonic seizures in the last thirty days.  Her seizures last one to two minutes with no loss of consciousness.  Sometimes she will have to lay on the floor for fifteen minutes following a seizure and has fatigue.  Intermittently she will defecate or urinate on herself.  (AR 700.)  She reported occasional memory loss or confusion, and anxiety, mood swings and insomnia daily.  (AR

1  701.)

2      Mental examination notes that Plaintiff is alert and oriented to person, place and time.  She

3  was able to concentrate normally, language and memory were intact.  (AR 702.)  Neurological

4  examination and an MRI of the brain were normal.  Her last seizure is noted to have been January

5  26, 2022, with no seizures since her last visit.  (AR 703.)

6      The ALJ also considered that Plaintiff reported difficulties with concentration and in her

7  ability to complete tasks and pay attention (AR 94, 360), but consultative examinations noted that

8  she was able to focus during the interview (AR 94, 467).  Additionally, mental status examinations

9  note that her concentration and calculation appear to be grossly intact, cognition is within normal

10  limits, and she appears to be of average intellectual functioning.  (AR 94, 468, 483; 497-98, 501,

11  504.)

12      The ALJ noted that mental status examinations revealed Plaintiff was cooperative, friendly,

13  and alert and oriented times three.  Grooming was adequate and she had good eye contact and facial

14  expressions were normal.  There was no bizarre behavior observed and mood was euthymic and

15  appropriate.  Affect was full and appropriate.  Plaintiff was able to concentrate normally.  Language

16  was intact and she spoke in clear articulate sentences.  Memory was intact and though process was

17  logical.  Perception was within normal limits and there were no delusions reported.  Cognition was

18  within normal limits and intelligence is estimated as average.  Insight and judgment were within

19  normal limits, good and unimpaired.  (AR 102, 468-69, 474, 477, 482-83, 501, 504, 517, 545, 548,

20  550, 553, 573, 585, 605, 608, 611, 616, 617, 619, 621, 623, 624, 626, 635, 655, 660, 665-66, 670,

21  672, 675, 676-77, 702, 707.)  The Court notes that on occasion Plaintiff is noted to be anxious,

22  depressed, or sad, however, other findings are generally as represented by the ALJ in the decision.

23      Substantial evidence supports the ALJ's finding that Plaintiff's symptom allegations are

24  inconsistent with the medical record.

25      3.    Improvement with Treatment

26      The ALJ found that Plaintiff's statements about the intensity, persistence, and limiting effects

27  of her symptoms are inconsistent with the overall record which shows her conditions is not as

28  debilitating as alleged.  The ALJ noted that the records reveal that Plaintiff's condition improved

with treatment and medication compliance.  (AR 100.) Shortly after restarting psychotropic medications, Plaintiff reported improvement in her anxiety, mood, and sleep and advised her provider that she was stable on her current regimen.  (AR 100-01.)

The ALJ noted that Plaintiff established with Pinnacle Primary Care on August 26, 2021, receiving refills of her anxiety medication and reporting that she was unable to get an appointment with a psychiatrist until November 2021 (AR 97, 474, 550), and was seen for psychotherapy on September 8, 2021, reporting no significant change in her condition (AR 97, 495-96).   On November 11, 2021, Plaintiff had a psychiatric diagnostic evaluation and was started on Zoloft, Seroquel and Klonopin.  (AR 97, 502, 505.)  Although Plaintiff reported no improvement in her symptoms on December 14, 2021, (AR 97, 602), the following day, December 15, 2021, Plaintiff reported improvement in her anxiety and mood, and that she was taking her medication as prescribed without any side effects (AR 101, 597).

On February 8, 2022, Plaintiff advised her psychotherapist that she had been recently hospitalized for kidney failure, stated she was doing fine otherwise, felt stable on her medication regimen, and was taking her medication as prescribed without any side effects.  (AR 100, 576.) The ALJ also noted that as for sleep, the medical records reveal Plaintiff advised providers she was sleeping 4 hours instead of 1 hour with medication.  (AR 100, 597.)

A condition that can be effectively controlled with medication is not disabling for the purposes of determining eligibility for Social Security Insurance benefits.  Warre v. Commissioner of Social Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006).  Substantial evidence supports the ALJ's finding that Plaintiff's symptoms improved when she was restarted on her medication and complied with her treatment regimen.

4.   Unexplained Failure to Comply with Treatment

The ALJ stated,

Since September 4, 2020, records reveal treatment for bipolar disorder, anxiety disorder, substance use disorder and seizure disorder.  Mental health treatment records reveal the claimant presented to care endorsing depression, anxiety, and insomnia, stating her life changed after she was diagnosed with HIV.  Reported symptoms included nervousness, panic attacks, chest tightness, shortness of breath, over thinking, negative thoughts, anger, irritability, social isolation, social anxiety, stigmatization, mood swings, depression, anxiety, manic episodes, insomnia,

occasional memory loss, and sleeping about three hours per night.  The manic episodes lasted a couple of hours, during which she took everything out of her closet and was unable to sleep.  Records reveal a history of self-harm when she was 19 years old. In 2009, after her mother passed away, she tried to overdose on prescription pain pills and starting drinking and driving.  The claimant denied any current substance use but reported a history of alcohol, marijuana, and cocaine use.  She was arrested at age 21 for "gang violence" and for drug sales.  The claimant was diagnosed with anxiety and adjustment disorder with depressed mood after being seen once in 2016 and was started on Lexapro, which had good effect, but she failed to follow up.  There was a gap in treatment beginning in June 2021 due to insurance issues (Ex. 8F; 10F; 12F; 16F; 18F).

(AR 97.)   An "unexplained, or inadequately explained, failure to seek treatment" may be the basis for an adverse credibility finding.  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

The ALJ noted further medical records that reveal evidence of treatment non-compliance.  Specifically, Plaintiff stopped going to follow-ups for HIV treatment, failed to follow up with mental health treatment after diagnosis, missed appointments, was non-compliant with HIV medications, and was not taking lisinopril for hypertension.   (AR 102.)

On August 10, 2021, Plaintiff reported that her last infectious disease follow-up was in 2018, and she had previously been on anti-virals, but "she just stopped going." (AR 476.)  On November 11, 2021, Plaintiff was seen for a psychiatric evaluation and reported that she was seen in 2016 by a provider who diagnosed anxiety and depression and she was placed on Lexapro with good results.  However, she did not follow-up after that.  (AR 610.)   On November 28, 2021, Plaintiff reported to the emergency room with complaints of a migraine.  She reported that she had a history of hypertension but is not taking lisinopril although it had been prescribed by her primary care physician.  (AR 517, 548, 550.)  On June 17, 2021; February 10, 2021; and February 20, 2021; Plaintiff failed to show for psychiatric appointments.  (AR 663, 668.)

The ALJ may properly rely on "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment."  Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012).  Substantial evidence supports the ALJ's finding that Plaintiff failed to comply with her prescribed course of treatment.

5.    Inconsistent Statements

The ALJ also noted inconsistencies in Plaintiff's testimony and the record.  The ALJ found that although Plaintiff alleged side effects to her medications (AR 362), mental health treatment

1    records reveal that she consistently denied any side effects.  (AR 100, 564, 576, 587, 597.)

2    Plaintiff's inconsistent statements regarding the side effects of her medication are a clear and

3    convincing reason to reject her testimony.  Robbins, 466 F.3d at 884 (conflicting or inconsistent

4    statements can contribute to an adverse credibility finding); Light v. Soc. Sec. Admin., 119 F.3d

5    789, 792 (9th Cir. 1997), as amended on reh'g (Sept. 17, 1997) (credibility determination can be

6    based on conflicts between the claimant's testimony and his own conduct, or on internal

7    contradictions in that testimony).

8         The ALJ provided clear and convincing reasons that are supported by substantial evidence

9    in the record to discount Plaintiff's subjective symptom testimony.

10        **B.      Whether the RFC Determination is Supported by Substantial Evidence**

11        Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence

12   in the record as she found Dr. Simonian's opinion persuasive but did not include any limitations

13   regarding Plaintiff's ability to interact with coworkers or supervisors.  (MSJ 9.)  Plaintiff argues

14   that Dr. Simonian found mild limitations in Plaintiff's ability to interact with the public, coworkers,

15   and supervisors; react to stressors common in a workplace environment; and maintain regular

16   attendance in the workplace and perform work activities on a consistent basis, but provided no

17   explanation as to why no limitations regarding Plaintiff's ability to interact with co-workers and

18   supervisors were included.  (MSJ 9-10.)

19        Defendant counters that while Dr. Simonian noted that Plaintiff was mildly limited in her

20   ability to interact with the public, co-workers, and supervisors, he did not include any limitations

21   flowing from that limitation.  Defendant argues that Plaintiff's contention that the ALJ needed to

22   include mental function limitations in the RFC is mistaken since the restriction was only mild.

23   (Opp. 13.)  Defendant states that the ALJ reasonably limited Plaintiff to no more than occasional

24   contact with the general public and also to simple, repetitive tasks in a routine work environment

25   which would limit her interactions with others or at least result in predictable interactions.  (Opp.

26   14.)  Defendant contends that the RFC properly accommodates any social interaction limitations

27   and furthermore, the other consultative examiner found no impairment in Plaintiff's ability to relate

28   and interact with co-workers and the public or in accepting instructions from supervisors.  (Opp.

14.)

## 1.   Legal Standard

A claimant's RFC is "the most [the claimant] can still do despite [her] limitations."  20 C.F.R. § 416.945(a)(1).  The RFC is "based on all the relevant evidence in [the] case record."  20 C.F.R. § 416.945(a)(1).  "The ALJ must consider a claimant's physical and mental abilities, § 416.920(b) and (c), as well as the total limiting effects caused by medically determinable impairments and the claimant's subjective experiences of pain, § 416.920(e)."  Garrison, 759 F.3d at 1011.  The ALJ must consider both severe and nonsevere medically determinable impairments when determining the RFC.  See 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity."); 20 C.F.R. § 404.1545(e) ("When you have a severe impairment(s), but your symptoms, signs, and laboratory findings do not meet or equal those of a listed impairment in appendix 1 of this subpart, we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity.").

At step four the RFC is used to determine if a claimant can do past relevant work and at step five to determine if a claimant can adjust to other work.  Garrison, 759 F.3d at 1011.  "In order for the testimony of a VE to be considered reliable, the hypothetical posed must include 'all of the claimant's functional limitations, both physical and mental' supported by the record."  Thomas, 278 F.3d at 956.

## 2.   Analysis

The ALJ considered that Dr. Simonian conducted an examination on October 26, 2021, and diagnosed Plaintiff with adjustment disorder with mixed emotional features.  (AR 103, 483.)  Dr. Simonian opined that Plaintiff had mildly limited ability to interact with the public, coworkers, and supervisors; ability to react to stressors common in a workplace environment; and ability to maintain regular attendance in the workplace and perform work activities on a consistent basis. (AR 103, 484.)  Plaintiff's ability to follow simple oral and written 1 or 2 steps instructions; ability

to follow detailed and complex instructions; ability to maintain concentration and adaptation for a period of time; and ability to perform work activities without special additional supervision were not limited.  (AR 103, 484.)  The ALJ found that Dr. Simonian's overall opinion persuasive. His opinion regarding Plaintiff's ability to perform simple tasks was persuasive because it was supported by the objective findings as well as Plaintiff's observed functioning and reports.  (AR 103.)  However, Dr. Simonian's opinion was not found to be entirely persuasive because Dr. Simonian essentially opined that the mental impairments were non-severe, which it is inconsistent with the overall treatment record.  (AR 103.)  After considering Plaintiff's subjective allegations and her treatment record, the ALJ found that Plaintiff was more limited than opinioned, as reflected in the established residual functional capacity.  (AR 103.)

The ALJ also considered that Plaintiff was examined by Dr. Martinez on January 25, 2021, and diagnosed with unspecified anxiety disorder and unspecified obsessive-compulsive disorder. (AR 103, 469.)   Dr. Martinez opined that Plaintiff had moderate impairment in her ability to maintain concentration and attention, persistence, and pace; mild impairment in the ability to do detailed and complex instructions; and no impairment her ability to understand, remember, and carry out simple one-or-two step job instructions; relate and interact with co-workers and the public; associate with day-to-day work activity, including attendance and safety; accept instructions from supervisors; maintain regular attendance in the workplace and perform work activities on a consistent basis; and perform work activities without special or additional supervision. (AR 103-04, 469.)

The ALJ found Dr. Martinez's opinion somewhat persuasive.  Dr. Martinez's opinion that Plaintiff had moderate impairment in the ability to maintain concentration and attention, persistence and pace and no impairment in the ability to perform simple tasks is persuasive because it is consistent with and supported by the objective clinical findings, Plaintiff's observed functioning, and Plaintiff's reports.  (AR 104.)  However, the ALJ found that the overall opinion was less persuasive because it was inconsistent with the overall record and after considering Plaintiff's subjective allegations as well as the subsequent treatment records and the ALJ found that Plaintiff was more limited than opined.  (AR 104.)

1    While Plaintiff argues that the residual functional capacity assessment did not contain the

2  mild limitations opined by Dr. Simonian, the residual functional capacity findings need not be

3  identical to the relevant limitations but must be consistent with them.  Turner v. Comm'r of Soc.

4  Sec., 613 F.3d 1217, 1223 (9th Cir. 2010).  "[A]n ALJ's assessment of a claimant adequately

5  captures restrictions related to concentration, persistence, or pace where the assessment is

6  consistent with restrictions identified in the medical testimony."  Stubbs-Danielson v. Astrue, 539

7  F.3d 1169, 1174 (9th Cir. 2008).

8    Plaintiff relies on Georgopoulos v. Colvin, No. CV 15-8606-E, 2016 WL 3769343 C.D.

9  Cal. July 14, 2016), to argue that the ALJ errs by failing to adopt the limitations of a physician

10  opinion that he found to be persuasive.  In Georgopoulos, the court found the ALJ erred by failing

11  to explain why he did not adopt the standing/walking limitations opined by the plaintiff's

12  physician.  Id. at *2.  However, while Plaintiff argues that the ALJ erred by not including

13  limitations consistent with Dr. Simonian's opinion, Dr. Simonian did not opine any limitations on

14  Plaintiff's ability to interact with the public, co-workers, or supervisors.  Rather, Dr. Simonian

15  opined that Plaintiff had only mild limitations in these areas.  (AR 484.)  The ALJ considered

16  Plaintiff's mild limitations in her ability to interact with the public, coworkers, and supervisors; to

17  ability to react to stressors common in a workplace environment; and ability to maintain regular

18  attendance in the workplace and perform work activities on a consistent basis.  (AR 103.)  The

19  ALJ accommodated Plaintiff's mild limitations by limiting her to simple, repetitive tasks in a

20  routine work environment with no more than occasional contact with the general public.  (AR 95.)

21  The ALJ considered that Plaintiff had only mild limitations in these areas and Plaintiff has failed

22  to show that the mild limitations in this area are inconsistent with the RFC findings.  The Court

23  finds Plaintiff has failed to show any error in the ALJ's consideration of the limitations opined by

24  Dr. Simonian and substantial evidence supports the RFC finding.

25    **C.    Whether there is a Discrepancy Between the RFC and Job Descriptions**

26    Plaintiff argues that the ALJ limited Plaintiff to simple, routine tasks, but found that Plaintiff

27  could perform work as an assembler, laundry laborer, office helper, and routing clerk which either

28  have level two reasoning level or do not constitute a significant number of positions.  (MSJ 6-7.)

1  Plaintiff contends that the level 2 jobs are inconsistent with the ALJ's RJC limitation to simple,

2  routine tasks and laundry laborer job has only 10, 000 jobs nationally which does not qualify as

3  existing in significant numbers.  (MSJ 7.)

4       Defendant counters that, contrary to Plaintiff's argument, while the Ninth Circuit has held

5  that reasoning level 2 is inconsistent with the limitation to one- to two-step tasks, and a limitation

6  to simple repetitive tasks is inconsistent with reasoning level 3, no conflict exists here between a

7  limitation to simple repetitive tasks and level two reasoning.  (Opp. 14-15.)

8       1.   Legal Standard

9        As previously noted, at step five, the Commissioner must "identify specific jobs existing

10  in substantial numbers in the national economy that [a] claimant can perform despite [her]

11  identified limitations."  Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015) (citation and internal

12  quotations omitted).  That is, the ALJ must consider potential occupations the claimant may be

13  able to perform, based on the claimant's RFC, age, education and work experience, and the

14  information provided by the Dictionary of Occupational Titles ("DOT") and the VE.  See id. at

15  846; Valentine, 574 F.3d at 689; 20 C.F.R. § 416.920(g).

16        "The DOT lists maximum requirements of occupations as generally performed, not the

17  range of requirements of a particular job as it is performed in specific settings."  SSR 00-4p,

18  available at 2000 WL 1898704 (Dec. 4, 2000).  "The term 'occupation,' as used in the DOT, refers

19  to the collective description of those jobs.  Each occupation represents numerous jobs."  Id.; see

20  also Johnson, 60 F.3d at 1435 (noting the DOT is not comprehensive, that "[i]ntroduction of

21  evidence of the characteristics of specific jobs available in the local area through the testimony of

22  a vocational expert is appropriate, even though the job traits may vary from the way the job title is

23  classified in the DOT," and holding "the ALJ was within his rights to rely solely on the vocational

24  expert's testimony.") (citations omitted).  Information about a particular job's requirements may

25  be available from a VE's experience in job placement or career counseling.  SSR 00-4p.  Thus, a

26  VE may be able to provide more specific information about jobs or occupations than the DOT.  Id.;

27  see also Lounsbury, 468 F.3d at 1114.  Accordingly, the ALJ may rely on VE testimony regarding

28  "(1) what jobs the claimant, given his or her [RFC], would be able to do; and (2) the availability

of such jobs in the national economy." Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999); Lockwood v. Comm'r of Soc. Sec., 616 F.3d 1068, 1071 (9th Cir. 2010) (the ALJ can meet the agency's burden of proving that other work exists in significant numbers by the testimony of a VE).

Nonetheless, hypothetical questions posed to the VE must set out all the limitations and restrictions of the particular claimant, as supported by the medical record. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Where the testimony of a VE is used, the VE must identify a specific job or jobs in the national economy having requirements that the claimant's physical and mental abilities and vocational qualifications would satisfy. 20 C.F.R. § 404.1566(b); see Burkhart v. Bowen, 856 F.2d 1335, 1340 n. 3 (9th Cir. 1988).

SSR 00-4p provides that where there is an apparent unresolved conflict between VE evidence and the DOT, the ALJ is required to reconcile the inconsistency; that is, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE to support a determination or decision about whether the claimant is disabled. SSR 00-4p, at *2; see also Johnson, 60 F.3d at 1435 (holding that, if the ALJ relies on a VE's testimony that contradicts the DOT, the record must contain "persuasive evidence to support the deviation."). "An example of a conflict between the DOT and a VE's testimony is when the DOT's description of a job includes activities a claimant is precluded from doing, and the VE nonetheless testifies that the claimant would be able to perform that job." Martinez v. Colvin, No. 1:14-cv-1070-SMS, 2015 WL 5231973, at *4 (E.D. Cal. Sept. 8, 2015) (citations omitted); see also Zavalin, 778 F.3d at 846 (providing example of apparent conflict as "expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle"). The ALJ must inquire, on the record at the disability hearing, as to whether or not there is such consistency. SSR 00-4p, at *2; Massachi v. Astrue, 486 F.3d 1149, 1153–54 (9th Cir. 2007). Further, the Social Security Administration ("SSA") notes neither the DOT nor the VE's evidence "automatically 'trumps' when there is a conflict"; rather, the ALJ must resolve the conflict by determining if the explanation given by the VE is reasonable and provides a basis for relying on the VE's testimony rather than the DOT information. SSR 00-4p, at *2.

Where the ALJ fails to resolve an apparent inconsistency, the court is left with "a gap in the record that precludes [it] from determining whether the ALJ's decision is supported by substantial evidence." Zavalin, 778 F.3d at 846; Massachi, 486 F.3d at 1154 ("we cannot determine whether the ALJ properly relied on [the VE's] testimony" due to unresolved occupational evidence). Nevertheless, a failure to ask the VE whether his testimony conflicts with the DOT may amount to harmless error if there is no conflict, or if the VE provides "sufficient support for [his] conclusion so as to justify any potential conflicts." Massachi, 486 F.3d at 1154, n.19; see also Hann v. Colvin, No. 12-cv-06234, 2014 WL 1382063, at *15 (N.D. Cal. Mar. 28, 2014).

2.   Analysis

The Ninth Circuit has advised that, "it's important to keep in mind that the [DOT] refers to 'occupations,' not to specific jobs. 'Occupation' is a broad term that includes 'the collective description' of 'numerous jobs' and lists 'maximum requirements' of the jobs as 'generally performed.' " Gutierrez v. Colvin, 844 F.3d 804, 807 (9th Cir. 2016) (quoting SSR 00-4P, 2000 WL 1898704, at *2–3.) "Because of this definitional overlap, not all potential conflicts between an expert's job suitability recommendation and the [DOT's] listing of "maximum requirements" for an occupation will be apparent or obvious." Gutierrez, 844 F.3d at 807-08.) The ALJ is only required to follow up on those conflicts that are apparent or obvious. Id. at 808. Tasks that are essential, integral, or expected parts of a job are the most likely to qualify as apparent conflicts and where the job itself is a familiar one less scrutiny by the ALJ is required. Id.

At the April 28, 2022 hearing, the VE was presented with a hypothetical of an individual with the same age and education as Plaintiff and having the same limitations as described in the RFC. (AR 749-50.) The VE opined that this individual would be able to perform the positions of assembler, small products, DOT number 706.684-022, light, SVP 2, unskilled with 20,800 jobs existing nationally; laundry laborer, DOT 361.687-018, medium, SVP 2, unskilled, with approximately 10,000 jobs nationally; office helper, DOT 239.567-010, light, SVP 2, unskilled, with 13,800 jobs nationally; and routing clerk, DOT 222.687-022, light, SVP 2 unskilled, with 97,000 jobs nationally.

Based on the testimony of the VE, the ALJ found that Plaintiff had the residual function capacity to perform the following jobs.

- Assembler Small Products (DOT: 706.684-022, light exertion, SVP 2 GED 211) of which there are approximately 20,800 jobs nationally;

- Laundry Laborer (DOT: 361.687-018, medium exertion, SVP 2 GED 111) of which there are approximately 10,000 jobs nationally;

- Office Helper (DOT: 239.567-010, light exertion, SVP 2 GED 222) of which there are approximately 13,800 jobs nationally;

    AND

- Routing Clerk (DOT: 222.687-022, light exertion, SVP 2 GED 222) of which there are approximately 97,000 jobs nationally.

(AR 107.)

The Court considers Plaintiff's argument that there is a conflict between the requirement of Level 2 reasoning and the RFC finding that Plaintiff is limited to simple, repetitive tasks.   The reasoning levels in the DOT range from Level 1(low) to Level 6 (high).  Levels 1 and 2 are defined as follows:

> LEVEL 1
> Apply commonsense understanding to carry out simple one- or two-step instructions.  Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.
>
> LEVEL 2
> Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions.  Deal with problems involving a few concrete variables in or from standardized situations.

DOT. App. C, Reasoning Development, available at 1991 WL 688702 (Jan. 1, 2016).

Here, Plaintiff has been limited to carrying out simple repetitive tasks in a routine work environment.  (AR 95.)  Courts in this circuit have consistently found that Level 2 reasoning jobs do not conflict with a restriction to simple work.  See Lara v. Astrue, 305 F. App'x 324, 326 (9th Cir. 2008) ("Reasoning Level 1 jobs are elementary, exemplified by such tasks as counting cows coming off a truck, and someone able to perform simple, repetitive tasks is capable of doing work requiring more rigor and sophistication—in other words, Reasoning Level 2 jobs."); Grigsby v. Astrue, No. EDCV 08-1413 AJW, 2010 WL 309013, at *2 (C.D. Cal. Jan. 22, 2010) (The restriction to jobs involving no more than 2 steps is what distinguishes Level 1 reasoning from

1  Level 2 reasoning.); Abrew v. Astrue, 303 F. App'x 567, 569 (9th Cir. 2008) (finding no conflict

2  between a limitation to only simple tasks and the VE testimony that claimant could perform jobs

3  that require Level 2 reasoning.); Coleman v. Astrue, No. CV 10-5641 JC, 2011 WL 781930, at *5

4  (C.D. Cal. Feb. 28, 2011) ("the weight of prevailing authority precludes a finding of any

5  inconsistency between a reasoning level of two and a mere limitation to simple, repetitive tasks or

6  unskilled work"); Xiong v. Comm'r of Soc. Sec., No. 1:09-CV-00398-SMS, 2010 WL 2902508,

7  at *6 (E.D. Cal. July 22, 2010) ("Courts within the Ninth Circuit have consistently held that a

8  limitation requiring simple or routine instructions encompasses the reasoning levels of one and

9  two."); see also Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1004 (9th Cir. 2015) (Level

10  2 reasoning requires "detailed" instructions which are tasks with more than one or two steps.).

11      Accordingly, the Court finds no apparent conflict between Plaintiff's ability to understand,

12  remember and carry out simple, repetitive tasks as found in her RFC and jobs requiring Level 2

13  reasoning.

14      At step five, the burden shifts to the Commissioner, who must show that there are a

15  significant number of jobs in the national economy that the claimant can perform given his RFC,

16  age, education, and work experience. 20 C.F.R. § 416.912(g); Lounsbury, 468 F.3d at 1114. In

17  Gutierrez v. Commr of Soc. Sec., 740 F.3d 519 (9th Cir. 2014), the Ninth Circuit considered what

18  constitutes a region for the purposes of the regulations. After finding that the region could include

19  the entire state, court noted that they have never set a bright-line rule for what constitutes a

20  "significant number" of jobs. Gutierrez, 740 F.3d at 528. They then considered whether 25,000

21  jobs in several regions of the country are significant. Id. at 528-29. The court determined that

22  25,000 nationally was a close call but affirmed the ALJ's decision holding that 25,000 jobs

23  nationally is a significant number of jobs. Id. at 529.

24      Here, the jobs identified by the ALJ total 141,600 jobs nationally, well above the 25,000

25  which the Ninth Circuit has found to constitute a significant number of jobs. The ALJ did not err

26  at step five.

27  **V.**

28  **CONCLUSION AND ORDER**

In conclusion, the Court denies Plaintiff's Social Security appeal and finds no harmful error warranting remand of this action.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Tonya Jean Cox.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **July 1, 2024**

UNITED STATES MAGISTRATE JUDGE

26